# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 16-1083V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| J.S., | * | |
| | * | Filed: July 30, 2025 |
| | * | |
| | * | Chief Special Master Corcoran |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Robert J. Krakow*, Law Office of Robert J. Krakow, New York, NY, for Petitioner.

*Alexis Babcock*, U.S. Department of Justice, Washington, D.C., for Respondent.

**DECISION GRANTING IN PART MOTION FOR
FINAL AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On August 30, 2016, J.S. filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Program").[2] Petition, dated Aug. 30, 2016 (ECF No. 1) ("Petition"). Petitioner alleged that she suffered from "inappropriate tachycardia" and autonomic dysfunction, manifesting in a wide variety of conditions and symptoms (including joint pain, dizziness, nausea, and postural orthostatic tachycardia syndrome ("POTS")), after

---

[1] This Decision will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "The Program" or "Program"]. Individual section references hereafter will be to Section 300aa of the Act.

receipt of the human papillomavirus and Hepatitis A vaccines on August 4 and 19, 2015. *Id.* at 1. I issued a decision denying entitlement, which was sustained after Petitioner's Motion for Review was denied, and was further affirmed by the Federal Circuit upon Petitioner's appeal. *J.S. v. Sec'y of Health & Hum. Servs.*, No. 16-1083V, 2022 WL 20213038, at *21 (Fed. Cl. Spec. Mstr. July 15, 2022), *mot. for review den'd*, 164 Fed. Cl. 314 (2023), *aff'd under Fed. Cir. R. 36*, No. 2023-1644, 2024 WL 4051281 (Fed. Cir. Sept. 5, 2024).

The Petitioner was represented by different counsel from the initiation of this claim through April 20, 2017, when the Court granted Petitioner's motion to substitute Robert Krakow as counsel. Prior counsel filed a Motion for Interim Attorney's Fees and Costs that was first deferred, but then granted by this Court. Motion for Interim Attorney's Fees and Costs, dated Apr. 20, 2017 (ECF No. 31) ("Interim Fees Mot."); Order, dated June 7, 2017 (ECF No. 40); Decision, dated Aug. 2, 2018 (ECF No. 72). Petitioner's current counsel, Robert Krakow, has now filed his sole motion for an award of fees and costs dating from April 10, 2017 through the present, but excludes work related to the motion for review and Circuit appeal. Motion, dated May 5, 2024 (ECF No. 134) ("Final Fees Mot.") at 1, 9. Petitioner seeks $219,394.87 in fees and costs ($196,470.60 in fees, plus $22,924.27 in costs) for the work of attorneys and staff at the Law Office of Robert J. Krakow, P.C. Final Fees Mot. at 42.

Respondent reacted to the fees request on May 6, 2025. *See* Response, dated May 6, 2025 (ECF No. 135) ("Resp."). Respondent defers to my discretion as to whether the statutory requirements for an award of attorney's fees and costs are met in this case, and if so, the calculation of the amount to be awarded. Resp. at 2–3. Petitioners filed a Reply on May 6, 2025, in further support of their motion. Reply, dated May 6, 2025 (ECF No. 136).

For the reasons set forth below, I hereby **GRANT** Petitioners' motion in part, awarding fees and costs in the total amount of **$211,186.67**.

## ANALYSIS

### I. Petitioner's Claim had Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful

claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Although Petitioner's claim was ultimately unsuccessful, I find that there was sufficient objective basis to entitle her to a fees and costs award—albeit barely so. There was some record evidence that Petitioner experienced a variety of symptoms after the relevant vaccines, and the nature of the injury was reasonably contested, even if the overall weight of evidence was strongly unsupportive of the claimed POTS diagnosis. I also note that I previously awarded interim fees based upon the claim, and while it did prove weak in the end, nothing from a fact standpoint changed in the matter as it proceeded that would justify a finding that reasonable basis ceased to exist once the matter was fully resolved.

Thus, and in light of the exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein. (I will, however, take into account the overall flimsy nature of the claim asserted in calculating the amount of fees to be

awarded. I also note that given the Program's repeated, and affirmed, rejection of claims that covered vaccines cause POTS, counsels should be wary of pursuing additional such claims in the future, unless armed with new and reliable scientific evidence that merits re-evaluation of the theory at issue).

## II.     Calculation of Fees

### A.     Hourly Rates

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. Id. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), except where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys and support staff, based on the years work was performed:

|  | 2017 Rate | 2018 Rate | 2019 Rate | 2020 Rate | 2021 Rate | 2022 Rate | 2023 Rate | 2024 Rate | 2025 Rate |
|---|---|---|---|---|---|---|---|---|---|
| **Robert Krakow (Attorney)** | $435 | $450 | $464 | $484 | $509 | $525 | $553 | $584 | $627 |
| **Elan Gerstmann** | n/a | n/a | n/a | n/a | $475 | $497 | n/a | n/a | n/a |
| **Paralegal** | $140 | $150 | $156 | $163 | $172 | $177 | $186 | $197 | $212 |

Messrs. Krakow and Gerstmann practice in New York, NY—a jurisdiction that has been deemed "in forum." Accordingly, they should be paid forum rates as established in *McCulloch. Kong v. Sec'y of Health & Hum. Servs.*, No. 14-145V, 2017 WL 2927304, at *1 (Fed. Cl. Spec. Mstr. June 6, 2017). The rates requested for Mr. Gerstmann (including for the paralegal) are consistent with what has previously been awarded for their work, in accordance with the Office of Special Masters' fee schedule. I therefore find no reason to reduce either Mr. Gerstmann's or the paralegal rate. However, Mr. Krakow's requested 2025 rate of $627.00 per hour reflects a $43.00 increase from previously-awarded rates. *See, Kotch v. Sec'y of Health & Hum. Servs.*, No. 19-675V, 2025 WL 1693555, at *2 (Fed. Cl. May 20, 2025); *I.J. v. Sec'y of Health & Hum. Servs.*, No. 16-864V, 2025 WL 1143585, at *2 (Fed. Cl. Spec. Mstr. Mar. 20, 2025). "[I]t is not the practice of the OSM to afford mid-year rate increases to attorneys under any circumstances." *Jefferson v. Sec'y of Health & Hum. Servs.*, No. 19-1882V, 2023 WL 387051, at *2 (Fed. Cl. Spec. Mstr. Jan. 9, 2023). Accordingly, I reduce Mr. Krakow's rate for time billed in 2025, to $584.00 per hour, consistent with what has previously been awarded. This rate results in a reduction of attorney's fees to be awarded of **$1,210.45**.[3]

### B. Time Expended

I have reviewed the billing records submitted with Petitioner's request, and find a reduction in the amount of fees to be awarded appropriate.

#### 1. Paralegal Tasks Billed at Attorney's Rate

After reviewing the billing records submitted with the present motion, I find that counsel labeled a few tasks as "paralegal" work, even though they were billed at an attorney rate.[4] And some unlabeled work was devoted to matters more properly billed using a paralegal rate.[5] "Tasks that can be completed by a paralegal or a legal assistant should not be billed at an attorney's rate." *Riggins v. Sec'y of Health & Hum. Servs.*, No. 99-382V, 2009 WL 3319818, at *21 (Fed. Cl. Spec. Mstr. June 15, 2009). "[T]he rate at which such work is compensated turns not on who ultimately performed the task but instead turns on the nature of the task performed." *Doe/11 v. Sec'y of Health & Hum. Servs.*, No. XX-XXXXV, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010). Although these billing entries reflect reasonable work on this matter, that work

---

[3] This amount consists of ($627.00 – $584.00 = $43.00 x 28.15 hrs.) = $1,210.45.

[4] See billing entries dated: 07/06/2017; 10/28/2017; 01/16/2018; 02/07/2018; 08/20/2020; 08/25/2020. ECF No. 134-2 at 10, 21, 24, 29, 44–45.

[5] Entries considered paralegal in nature include drafting and filing basic documents such as an exhibit list, PAR Questionnaire, notice of filing exhibit list, statements of completion, notice of intent, cover sheet, joint notices not to seek review, filing medical records, drafting subpoenas for records, and following up on production of records from providers. See billing entries dated: 04/27/2017; 05/08/2017; 05/11/2017; 05/12/2017; 07/14/2017; 11/09/2017; 02/01/2018; 02/11/2018. ECF No. 134-2 at 2–4, 11, 22, 25, 31.

must be charged at a reduced rate comparable to that of a paralegal. Application of the foregoing reduces the amount of fees to be awarded by **$2,392.90**.[6]

### 2. Administrative/Clerical Work

Petitioner requests compensation for a number of billing entries reflecting tasks falling under the category of administrative overhead,[7] and therefore not properly billed at attorney rates. It is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. *See, Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services...should be considered as normal overhead office costs included within the attorneys' fees rates"). Mr. Krakow has previously been denied fees for billing entries that include language such as "...receive disk, copy to computer..." or "[c]heck file, docket, order and calendar" or "finalize invoice" on the basis that these entries represent administrative tasks. *Moxley v. Sec'y of Health & Hum. Servs.*, No. 06-213V, 2017 WL 5080289, at *3 (Fed. Cl. Oct. 12, 2017).

I have gone through the record and removed the entries that are better classified as administrative tasks,[8] resulting in a reduction in the amount of fees by a further **$412.85**.[9]

## III. Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

---

[6] This amount consists of paralegal tasks billed by attorney Robert Krakow: ((($435 - $140)*5.2 hrs.) + (($450 - $150)*1.9 hrs.) + (($484 - $163)*0.9 hrs.) = $2,348.65). ECF No. 134-2 at 2–4, 10–11, 21–22, 24–25, 29, 31, 44–45.

[7] See billing entries dated: 07/07/2017; 08/29/2017; 09/25/2017; 06/14/2021. ECF. No. 134-2 at 10, 14, 57.

[8] See billing entries dated 07/07/2017; 07/14/2017; 08/29/2017; 09/25/2017; 09/19/2021; 01/30/2022; 03/24/2023; 09/22/2024. ECF No. 134-2 at 10–11, 14, 17, 60, 73, 86, 95.

[9] This amount consists of clerical/administrative tasks billed by attorney Robert Krakow: (($435 x 0.45 hrs.) + ($509 x 0.1 hrs.) + ($525 x 0.1 hrs.) + ($553 x 0.1 hrs.) + ($584 x 0.1 hrs.) = $412.85). ECF No. 134-2 at 10–11, 14, 17, 60, 73, 86, 95.

Petitioner seeks $22,924.27 in outstanding costs, including the filing fee, medical record retrieval costs, mailing costs, and costs associated with three experts: Lawrence Steinman, M.D., Arthur Brawer, M.D., and Alyssa Watanable, M.D. Ex. 81 Tab 2 (ECF No. 134-2) at 99–102. Documentation was provided for the Court's filing fee, medical records requests, copying expenses, and mailing expenses, thus I grant these costs in full. I discuss the remaining expenses below.

### A. Expert Costs for Dr. Lawrence Steinman

Dr. Steinman prepared two expert reports and submits an invoice for $16,362.00 (claiming 29.75 hours of labor over the course of 2017 and 2018 at $550 per hour). Final Fees Mot. at 32; Ex. 81 Tab 5. My colleagues and I have both granted and denied Dr. Steinman's $550 rate over the years. *L.R. by & through Baxter v. Sec'y of Health & Hum. Servs.,* No. 16-922V, 2023 WL 2320342, at *7 (Fed. Cl. Mar. 2, 2023) (granting Dr. Steinman's requested $550 rate for work performed in 2022, but reducing his rate to $500 for work performed in 2017, 2019, and 2020); *Sparrow v. Sec'y of Health & Hum. Servs.*, No. 18-295V, 2021 WL 5410424, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2021) (finding that $550.00 per hour was reasonable for work Dr. Steinman performed in 2021, and that $500.00 per hour was reasonable for work he performed in 2019 and 2020); *Girardi v. Sec'y of Health & Hum. Servs.*, No. 17-181, 2020 WL 7868229, at *6 (Fed. Cl. Spec. Mstr. Dec. 7, 2020) (finding that $550.00 per hour was reasonable for Dr. Steinman's work in 2017, 2018, and 2019).

In the present case, Dr. Steinman's expert reports were consistent with what he has offered in other cases, and included sections directly copied from other articles or evidence. *See, e.g.*, First Steinman Report at 4 (attaching in report 2016 antibody testing results from Exhibit 16), 7 (diagram reproduced from Scientific American article on how molecular mimicry works). Based on the "copy and paste "quality of Dr. Steinman's work product and previous Program fee decisions, I find it reasonable to reduce Dr. Steinman's hourly rate to $500.00 for the work performed in this case (and this is especially generous, given how unpersuasive the opinion he offered was). I therefore reduce Dr. Steinman's costs by **$1,487**.[10]

### B. Expert Costs for Dr. Arthur Brawer

Dr. Brawer prepared three expert reports—Exhibits 49 (ECF No. 92), Ex. 60 (ECF No. 93), Ex. 63 (ECF No. 100)—for which he provided two invoices. Ex. 81-Tab 6 (ECF No. 134-6). Dr. Brawer billed $4,500.00 for his expert services—$2,700.00 for his initial report, including review of the medical record exhibits, and $1,800.00 for his supplemental reports. Ex. 81-Tab 6. Dr. Brawer has failed to justify the reasonableness of his costs, and I will reduce them accordingly.

First, Dr. Brawer's reports do not further Petitioner's claim. Special Masters may assess

---

[10] Reduction in Dr. Steinman's costs was determined by: $550 - $500 = $50 x 29.75 hrs. = $1,487.

the quality of the work performed and the overall persuasiveness when determining expert fees. *See Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 796-798 (2010) (holding that the special master was justified in reducing expert fees given the "level of work performed") *Saxton v. Secretary of Health & Human Servs.*, 3 F.3d 1517, 1521 (noting that it is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done").

In the present case, Dr. Brawer's reports were unreliable and unhelpful. The Petitioner herself stated that her claim "relies exclusively upon the expert opinion of Dr. Steinman and the associated medical literature." Petitioner's Brief in Support of Entitlement, dated Dec. 6, 2021 (ECF No. 105) at 3. The extent of Dr. Brawer's contribution to Petitioner's claim was his opinion that Petitioner suffered from a "Gardasil-induced illness," and his concurrence with Dr. Steinman that the presence adrenergic antibodies is significant and indicative of general causation. Ex. 49 at 3. But Dr. Brawer did not develop the adrenergic antibody theory with any degree of specificity. *See id.* In addition, Dr. Brawer's third report offers no substantive support to the case, as it is a diatribe against Respondent's experts. *See* Ex. 63.

I am generally reluctant to deny compensation to experts who have attempted to assist a petitioner with her claim, no matter my assessment of the expert's overall quality. But I have previously reduced costs for experts who excessively charged for their work or whose efforts were unhelpful. *See, e.g., Monte v. Sec'y of Health & Hum. Servs.*, No. 21-1960V, 2024 WL 1640006, at \*4 (Fed. Cl. Mar. 21, 2024); *Martin v. Sec'y of Health & Hum. Servs.*, No. 15-789V, 2020 WL 8674683, at \*4 (Fed. Cl. Dec. 8, 2020). Dr. Brawer's last two reports were largely unhelpful to the Petitioner's claim (especially to the extent he thought it was appropriate to verbally attack another member of the medical profession, rather than offer reasoned objections to Respondent's contentions). Ex. 63. I therefore deny costs associated with those reports, reducing the amount to to be awarded by **$1,800.00**.

Second, Petitioner acknowledges Dr. Brawer did not provide hourly invoices, and even maintains that Dr. Brawer may not have prepared any invoices at all. Final Fees Mot. at 37. However, Petitioner believes that Dr. Brawer spent at least twelve hours on this case based on the fact Dr. Brawer produced three reports. *Id.*

Dr. Brawer has been warned and refused compensation in the past because he has failed to submit hourly billing records. *See, e.g.*, *Clark v. Sec'y of Health & Hum. Servs.*, No. 17-1553V, 2023 WL 2319374, at \*6 (Fed. Cl. Mar. 2, 2023); *Brunker v. Sec'y of Health & Hum. Servs.*, No. 18-683V, 2023 WL 21255 (Fed. Cl. Spec. Mstr. Nov. 29, 2022); *Drobbin v. Sec'y of Health & Hum. Servs.*, No. 14-225V, 2022 WL 1515024, at \*4 (Fed. Cl. Spec. Mstr. Apr. 28, 2022); *Moses v. Sec'y of Health & Hum. Servs.*, No. 19-739V, 2020 WL 6778002, at \*4 (Fed. Cl. Spec. Mstr. Oct. 23, 2020); *Hanson v. Sec'y of Health & Hum. Servs.*, No. 18-590V, 2020 WL 5628694, at \*2

fn. 3 (Fed. Cl. Spec. Mstr. Aug. 24, 2020); *Whelan v. Sec'y of Health & Hum. Servs.*, No. 16-1174V, 2019 WL 5290521, at *3 fn. 6 (Fed. Cl. Spec. Mstr. Sept. 11, 2019). Based on previous decisions, I would not be remiss if I denied compensation to Dr. Brawer for failure to provide an itemized bill. However, as stated above, I am reluctant to deny compensation to experts for their efforts. I shall therefore reduce Dr. Brawer's remaining fees by 15%, resulting in an additional reduction of **$405.00**.

### C.    Expert Costs for Dr. Alyssa Watanabe

Dr. Wantanabe reviewed and provided an analysis of Petitioner's MRI imaging, requesting a total amount of $1,000.00 for her work. Final Fees Motion at 38; Ex. 81 Tab 11, 13. Dr. Watanabe also failed to submit an itemized invoice detailing the number of hours she spent on the matter. However, Petitioner did provide the check issued to Dr. Watanabe for her work, and her report was reasonable—even though it was not relied upon in Petitioner's case-in-chief. *See* Final Fees Mot. at 38. Experts who fail to produce invoices detailing their hourly rates and time spent on a matter should not expect to continue to receive a full award. Therefore, to be consistent and to avoid too much of a penalty, I will reduce Dr. Watanabe's requested compensation by 15%. This reduces her requested costs by **$150.00**.

Both experts (and the counsel who retain them) are warned in the future to take care that the time they devote to a matter is reasonably consistent with the value and quality of the report and testimony that is produced in the end.

### CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioners' Motion for Attorney's Fees and Costs, and award a total of **$211,186.67 (reflecting $192,454.40 in attorney's fees, and $18,732.27 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[11]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.